# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOHNATHAN DEMOND COLE, SR.,**

    Plaintiff,

  v.                                            Case No. 17-CV-1366

**NANCY A. BERRYHILL,**
   *Deputy Commissioner of Operations,*
   *Social Security Administration,*

    Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Johnathan Demond Cole, Sr., alleges that he is unable to work due to back problems and mental-health impairments. After the Social Security Administration denied his applications for benefits, Mr. Cole requested and received a hearing before an administrative law judge. The ALJ determined that Mr. Cole remained capable of working notwithstanding his impairments. Mr. Cole now seeks judicial review of that decision.

Mr. Cole argues that the ALJ erred in evaluating his subjective allegations of disabling symptoms and in weighing the opinions of his treating source. The Commissioner contends that the ALJ's decision is supported by substantial evidence. The Court agrees with the Commissioner. Because the ALJ did not err when she only partially credited Mr. Cole's allegations and the opinions of his nurse, her decision denying Social Security benefits to Mr. Cole will be affirmed.

I.  **Background**

Mr. Cole was born in Aberdeen, Mississippi, on December 11, 1982. Transcript 309, ECF Nos. 11-2–11-9. He moved to Kenosha, Wisconsin, at age three or four but returned to Mississippi during high school. Mr. Cole received special-education services throughout his schooling. Tr. 37, 309. He graduated from high school in 2000. Mr. Cole got married in 2008. Tr. 193. He and his wife have three minor children. Tr. 36–37, 193. Mr. Cole has worked as a machine operator, fast-food worker, and line worker. *See* Tr. 228. He was fired from his most recent job in February 2013. Tr. 227.

In September 2013, Mr. Cole applied for disability insurance benefits, Tr. 192–99, and supplemental security income, Tr. 200–05, alleging that he became disabled on February 28, 2013. Mr. Cole asserted that he was unable to work due to a learning disability, back problems, lung issues, and anxiety. *See* Tr. 227. After the SSA denied his applications initially, Tr. 65–88, and upon reconsideration, Tr. 89–114, Mr. Cole requested a hearing before an ALJ, *see* Tr. 130–31. The SSA granted Mr. Cole's request, *see* Tr. 132–52, 155–86, and held an administrative hearing on May 10, 2016, before ALJ Janice M. Bruning, *see* Tr. 33–64. Mr. Cole was represented by an attorney at the hearing. *See* Tr. 33.

Mr. Cole testified at the hearing. He indicated that he was living in an apartment in Fond du Lac, Wisconsin, with his wife and children. *See* Tr. 37, 140. Mr. Cole stated that, prior to being involved in a motor vehicle accident in March 2015, he did not receive much treatment or care for his physical impairments. Tr.

40. However, since the accident, he experienced constant, daily pain in his neck, shoulder, and arm that impacted nearly all activity. Tr. 45–50, 53–55. After the accident, his wife helped with most daily activities. Tr. 47–49. Mr. Cole testified that he could walk only a few feet before needing to stop and rest, stand for fifteen to twenty minutes at a time, sit for twenty to thirty minutes at a time, and lift about five pounds. Tr. 43–44. He used a cane every day, but it was not prescribed by a doctor. Tr. 44–45. Mr. Cole also reported difficulty climbing stairs, bending, stooping, crouching, crawling, using his right hand, and sleeping. Tr. 44–50.

As for his mental impairments, Mr. Cole indicated that he read at a third-grade level and his math skills were at a second-grade level. Tr. 50–51. He testified to having low self-esteem and experiencing crying spells. Tr. 41. Additionally, Mr. Cole reported suffering about four panic attacks each week. Tr. 42.

The ALJ also heard testimony from Timothy Tansey, a vocational expert. Mr. Tansey testified that a hypothetical individual with Mr. Cole's age, education, and work experience could no longer perform his past jobs. Tr. 56–57. Such an individual could still perform other jobs, however, even if he were limited to a restricted range of sedentary work. *See* Tr. 57–62. According to Mr. Tansey, those other jobs would allow an employee to be off-task no more than ten percent of the workday, and employers at those jobs would tolerate, on average, one unexcused absence each month. Tr. 62. No jobs would be available if the individual could only occasionally "handle, finger, and feel" with his right hand. Tr. 61–62.

On August 1, 2016, the ALJ issued a decision unfavorable to Mr. Cole. Tr. 12–32. The ALJ determined that Mr. Cole had not engaged in substantial gainful activity since his alleged onset date; Mr. Cole suffered from five "severe" impairments: lumbar spinal disorder, obesity, affective disorder, anxiety disorder, and cervical spine disorder; Mr. Cole did not suffer from an impairment or combination of impairments that met or medically equaled the severity of a presumptively disabling impairment; as of March 2015, Mr. Cole had the RFC to perform a restricted range of sedentary work; Mr. Cole was unable to perform any past relevant work; and other jobs existed in significant numbers in the national economy that Mr. Cole could perform. *See* Tr. 15–27. Based on those findings, the ALJ concluded that Mr. Cole was not disabled.

Thereafter, Mr. Cole requested review of the ALJ's decision by the SSA's Appeals Council. Tr. 189–191. On August 6, 2017, the Appeals Council denied Mr. Cole's request for review, Tr. 1–6, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

Mr. Cole filed this action on October 6, 2017, seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). Complaint, ECF No. 1 at 2–3. The matter was reassigned to this Court after the parties consented to magistrate judge jurisdiction. *See* Order Reassigning Case on Consent, ECF No. 5; *see also* Consent to Proceed Before a Magistrate Judge, ECF Nos. 3, 4 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)). It is now fully briefed and ready for disposition.

*See* Plaintiff's Brief in Opposition, ECF No. 12; Defendant's Memorandum in Support of the Commissioner's Decision, ECF No. 16; Plaintiff's Reply Brief, ECF No. 17.

## II. Standard of Review

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

In reviewing the record, this Court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir.

5

2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) and *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). The ALJ's decision must be reversed "[i]f the evidence does not support the conclusion." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569). Likewise, reviewing courts must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121 (citations omitted).

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if her decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

### III. Discussion

Mr. Cole maintains that the ALJ's decision denying him Social Security benefits is not supported by substantial evidence and is contrary to SSA law and regulation. Compl. ¶ 5. He asks the Court to enter judgment finding that he is

6

disabled or, alternatively, to reverse and remand the matter to a different ALJ for a de novo hearing. Pl.'s Br. 22.

### A. Legal framework

Under the Social Security Act, a person is "disabled" only if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). The disability must be sufficiently severe that the claimant cannot return to his prior job and is not capable of engaging in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the SSA must follow a five-step sequential evaluation process, asking, in order: (1) whether the claimant has engaged in substantial gainful activity since his alleged onset of disability; (2) whether the claimant suffers from a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of any impairment listed in the SSA regulations as presumptively disabling; (4) whether the claimant's RFC leaves him unable to perform the requirements of his past relevant work; and (5) whether the claimant is unable to perform any other work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four." *Id.* (citing *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004)). Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

**B. Legal analysis**

Mr. Cole argues that the ALJ erroneously discounted his subjective complaints concerning the limiting effects of his impairments and failed to give sufficient weight to the opinions of his treating nurse.

**1. Whether the ALJ erred in evaluating Mr. Cole's subjective symptoms**

ALJs use a two-step process for evaluating an individual's symptoms. Social Security Ruling No. 16-3p, 2016 SSR LEXIS 4, at *5–10 (Mar. 16, 2016). First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *5. Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *9.

Reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks

8

explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id.* "In drawing its conclusions, the ALJ must 'explain her decision in such a way that allows [a reviewing court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (quoting *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)).

The ALJ here concluded that Mr. Cole's medically determinable impairments could reasonably be expected to cause his alleged symptoms but found that Mr. Cole's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 23. Ultimately, the ALJ determined that, following the motor vehicle accident, Mr. Cole could perform sedentary work[1] with the following additional restrictions: no climbing ladders, ropes, or scaffolding; no more than occasional climbing of ramps and stairs, balancing, stooping, crouching, kneeling, crawling, bending, and twisting; must avoid concentrated exposure to work hazards such as unprotected heights and dangerous moving machinery; no more than occasional overhead reaching with the right upper extremity; no more than frequent

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

9

handling, fingering, and feeling with the right arm; no more than simple, routine tasks; no public contact; and no more than occasional contact with co-workers and supervisors. Tr. 21.

Mr. Cole first argues that the ALJ failed to comply with SSR 16-3p and instead relied on "meaningless" boilerplate frequently criticized by the Seventh Circuit. Pl.'s Br. 10 (collecting cases). The Court respectfully disagrees. In this case, the ALJ went beyond the stock credibility statement and supported her finding with references to Mr. Cole's allegations, the objective medical evidence, and the opinion evidence. *See* Tr. 22–26. Contrary to Mr. Cole's suggestion, the ALJ was not required to "specify which statements were not credible." *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) (citing *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003); *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009)). At any rate, it is clear from the ALJ's RFC assessment that she accepted many of Mr. Cole's allegations.

Mr. Cole next argues that the ALJ's reliance on the lack of objective medical findings was insufficient to support her credibility finding. Pl.'s Br. 11–12. It's true that an ALJ cannot disregard a claimant's subjective complaints of pain simply because those complaints are not fully supported by the medical evidence. *See Pope v. Shalala*, 998 F.2d 473, 486 (7th Cir. 1993). But that's not what happened here. The ALJ in this case considered Mr. Cole's complaints in light of the objective medical evidence and reasonably concluded that the inconsistencies between his complaints and the evidence suggested symptom exaggeration. *See* Tr. 23; *see also Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) (citing *Getch v. Astrue*, 539 F.3d

10

473, 483 (7th Cir. 2008)). The ALJ also reasoned that Mr. Cole's allegations were not entirely consistent with the opinion evidence in the record, the nature of his treatment, or his ability to carry out certain activities. *See* Tr. 20, 21–26. Consequently, the ALJ's consideration of the objective medical evidence was consistent with the SSA's own policy interpretations. *See* SSR No. 16-3p, 2016 SSR LEXIS 4, at *10–20 (clarifying how the SSA considers evidence in evaluating claimants' subjective allegations).

In addition, the ALJ sufficiently explained how Mr. Cole's allegations were inconsistent with the objective medical evidence. For example, the ALJ noted that Mr. Cole claimed to be disabled as of February 2013 but acknowledged at the hearing that he did not seek much treatment for his back issues prior to the car accident in March 2015. Tr. 22; *see also* Tr. 39–40. Likewise, although Mr. Cole alleged that he needed a cane to walk, could walk for only a few feet, and could stand for twenty to thirty minutes, Tr. 43–45, the ALJ accurately noted that treatment records did not show any gait abnormalities, *see* Tr. 22 (citing Tr. 355–361, 421–30). And the ALJ noted that Mr. Cole demonstrated good strength upon physical examination despite complaining of difficulties using his right upper extremity. Tr. 22 (citing Tr. 421–30).

Relatedly, Mr. Cole argues that the objective medical evidence supported, rather than undercut, his allegations. Pl.'s Br. 12–16. In support of this argument, Mr. Cole cites progress notes that show he continued to experience significant issues despite participating in ten physical therapy sessions. Pl.'s Br. 13–14 (citing

11

Tr. 385). The ALJ, however, explicitly mentioned this evidence in her decision: "Even with physical therapy, [Mr. Cole] continued to demonstrate significant range of motion limitations, weakness and instability of the cervical spine, postural deficits, radicular symptoms, decreased range of motion and pain of the right shoulder." Tr. 18 (citing Tr. 380–420, 421–30). And the ALJ included significant exertional and non-exertional restrictions in her RFC assessment. *See* Tr. 21. Crucially, Mr. Cole does not explain why that RFC assessment does not adequately account for his demonstrated limitations.

Finally, Mr. Cole asserts that the ALJ ignored evidence that supported his allegations, namely a survey and a questionnaire he completed in January 2016 for physical therapy. Pl.'s Br. 14–17 (citing Tr. 392–95). The ALJ's failure to specifically mention these records is not grounds for reversal. For one, ALJs are not required "to address every piece of evidence or testimony in the record." *Zurawski*, 245 F.3d at 889. More importantly, the complaints Mr. Cole made in those records are largely duplicative of allegations contained elsewhere in the record that the ALJ did mention and consider. The ALJ therefore did not, as Mr. Cole suggests, ignore entire lines of evidence favorable to him.

In sum, the Court finds that the ALJ's decision to partially discredit Mr. Cole's alleged symptoms was not so lacking in explanation or support that it is patently wrong.

## 2. Whether the ALJ erred in weighing the opinions of Mr. Cole's treating nurse

Mary Lynn Deli, an advanced practice nurse, began treating Mr. Cole in early 2016. The record contains treatment notes from only two visits, on January 11 and February 8. During those visits, Mr. Cole complained about constant pain in his neck and right arm that was aggravated by activity and that did not improve with medication. Tr. 425, 428. On physical examination, Mr. Cole demonstrated tenderness in his cervical spine and a positive Spurling's test. Tr. 426, 429. However, he had a normal gait and motor strength. Ms. Deli noted the following diagnoses: cervical disc disorder with radiculopathy, post-laminectomy syndrome, radiculopathy, and cervicalgia. Tr. 426, 429. She increased Mr. Cole's hydrocodone dose following the February 8 visit so that he could participate in physical therapy. Tr. 426. Ms. Deli further noted that, because Mr. Cole had failed conservative care and was functionally impaired, an epidural steroid injection was warranted. Tr. 426.

On May 11, 2016, Ms. Deli completed a Medical Source Statement regarding Mr. Cole's ability to do work-related activities. Ms. Deli opined that Mr. Cole could lift no more than ten pounds at a time, required a sit/stand/walk option, could sit for two or three hours during a workday, and could stand or walk for one hour per workday. Tr. 432. Ms. Deli further opined that Mr. Cole could only occasionally (very little to one-third of the time) stoop, crouch, or kneel and could never reach overhead with his right arm. Tr. 432–33. According to Ms. Deli, Mr. Cole would need two to three unscheduled breaks during each workday; would likely be absent

from work two days per month due to his condition, symptoms, or treatment; would be off-task fifteen percent of the day due to his impairments; could work for only four to five hours per day; and could use a cane to stand or ambulate as needed. Tr. 433.

The ALJ gave Ms. Deli's opinions "partial weight" because she did not explain the bases for her opinions or refer to any treatment note in support of her conclusions. Tr. 25. The ALJ further reasoned that Ms. Deli's opinions were not consistent with other evidence in the record, including physical therapy notes that showed a normal gait, no concern about absences, and improvement with mobility in the right arm. *See* Tr. 25 (citing Tr. 383, 411). Also, in the ALJ's view, the record did not support Ms. Deli's recommendation that Mr. Cole be allowed to use a cane as needed. Tr. 25 (citing Tr. 421–30).

Mr. Cole first argues that the ALJ erred in failing to assign controlling weight to Ms. Deli's opinions. Pl.'s Br. 18–21; Pl.'s Reply 4–5. If certain criteria are met, the ALJ must give controlling weight to a treating source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Social Security Ruling No. 96-2p, 1996 SSR LEXIS 9, at *3–4 (July 2, 1996); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). But only "acceptable medical sources" can provide medical opinions that may be entitled to controlling weight. *See* Social Security Ruling No. 06-3p, 2006 SSR LEXIS 5, at *3–4 (Jan. 1, 2006) (citing 20 C.F.R. §§ 404.1527(a)(2), (d) and 416.927(a)(2), (d)). At the time of the ALJ's decision, the opinion of an advanced nurse practitioner was not an

14

opinion from an "acceptable medical source." *See* 20 C.F.R. §§ 404.1502(a), 416.902(a); SSR No. 06-3p, 2006 SSR LEXIS 5, at *2–5; *see also Angeles v. Astrue*, No. 08-3194, 2009 U.S. Dist. LEXIS 88891, at *25–28 (C.D. Ill. Sept. 23, 2009) (finding that the opinion of an advanced nurse practitioner is not entitled to controlling weight because an advanced nurse practitioner is not a "treating source"). Thus, the ALJ did not err in failing to assign controlling weight to Ms. Deli's opinions.[2]

Nevertheless, the opinion of an advanced nurse practitioner remains "important and should be evaluated on key issues such as impairment severity and functional effects." SSR No. 06-3p, 2006 SSR LEXIS 5, at *8. In evaluating opinion evidence from advanced nurse practitioners, the ALJ can apply the same factors used to evaluate opinions from acceptable medical sources. *Id.* at *10–11 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).[3] "Not every factor for weighing opinion evidence will apply in every case." SSR No. 06-3p, 2006 SSR LEXIS 5, at *12. Rather, the ALJ "generally should explain the weight given to opinions from [advanced nurse practitioners], or otherwise ensure that the discussion of the evidence in the . . .

---

[2] In early 2017, the SSA eliminated the "treating source rule." *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The SSA also added advanced nurse practitioners to the list of acceptable medical sources. *See* §§ 404.1502(a)(7), 416.902(a)(7). However, those revisions do not apply here because Mr. Cole's claim was filed before March 27, 2017. *See id.*

[3] These factors include: the examining relationship between the individual and the source; the treatment relationship between the individual and the source (including the length, nature, and extent of the treatment relationship and the frequency of examination); whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; whether the source is a specialist; and any other relevant factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

decision allows a . . . subsequent reviewer to follow [her] reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *15–16.

Mr. Cole argues that the ALJ did not sufficiently justify the weight she assigned to Ms. Deli's opinions. Pl.'s Br. 19–21; Pl.'s Reply 4–5. The Court respectfully disagrees. *First*, the ALJ accurately noted that Ms. Deli did not explain her opinions or support them with references to any treatment notes. Both are valid reasons for discounting medical opinions. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). *Second*, the ALJ reasonably questioned Ms. Deli's recommendation that Mr. Cole be allowed to use a cane as needed, given that her own treatment notes showed that Mr. Cole walked with a normal gait upon examination. *See, e.g.*, Tr. 426, 429. Mr. Cole has not pointed to any objective evidence in the record that supports his need to use a cane.

*Third*, the ALJ did not err in discussing Mr. Cole's physical therapy notes. Those notes reflect that, while Mr. Cole still had limitations, he did show some improvement in his ability to move his right arm. *See* Tr. 383, 411. The ALJ did not suggest that all of Mr. Cole's limitations were alleviated with physical therapy or ignore entire lines of evidence favorable to him—indeed, she specifically noted that Mr. Cole "continued to demonstrate significant range of motion limitations, weakness and instability of the cervical spine, postural deficits, radicular symptoms, decreased range of motion and pain of the right shoulder." Tr. 18 (citing Tr. 380–420, 421–30). Rather, the ALJ reasonably determined that the record did not support the degree of limitations opined by Ms. Deli. *See* 20 C.F.R.

§§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). And the ALJ did include significant exertional and non-exertional limitations in her RFC assessment.

*Finally*, the ALJ reasonably found that Ms. Deli did not explain the need for frequent absences and that this concern was not supported by the record. Mr. Cole was discharged from physical therapy because he missed multiple appointments and did not attempt to reschedule. Tr. 383. He claimed during the administrative hearing that his doctors advised him to stop going to physical therapy. Tr. 40–41. That assertion, however, is not supported by any other evidence in the record. *See, e.g.*, Tr. 357–61, 423–30. Moreover, Mr. Cole's purported explanation for abandoning physical therapy is not inconsistent with the ALJ's determination that "there is no evidence of missing appointments due to medical reasons." Tr. 25. An ALJ may validly give less weight to an unsupported opinion that is inconsistent with the record. *See* §§ 404.1527(c)(3) & (4), 416.927(c)(3) & (4).

In sum, the Court finds that the ALJ sufficiently explained her decision to give only partial weight to Ms. Deli's opinions.

## IV.  Conclusion

For all the foregoing reasons, the Court finds that the ALJ did not commit reversible error in finding that Mr. Cole was not disabled as of February 2013. The Court therefore will affirm the ALJ's decision denying Mr. Cole's claim for Social Security benefits.

17

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of September, 2018.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge